**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
*dalekgalipo@yahoo.com*
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M.G., a minor, by and through guardian *ad litem* James K. Sadigh; and MARK GOULD, individually,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; and DOES 1-10, inclusive,<br><br>Defendants. | CASE No.:<br><br>**PLAINTIFFS' COMPLAINT FOR DAMAGES**<br><br>1. 42 U.S.C. § 1983 (Freedom of Assembly, Freedom of Speech, Retaliation)<br>2. Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)<br>3. 42 U.S.C. § 1983 (Unreasonable Search and Seizure – Excessive Force)<br>4. 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy)<br>5. 42 U.S.C. § 1983 (Municipal Liability – Failure to Train)<br>6. 42 U.S.C. § 1983 (Municipal Liability – Ratification)<br>7. Battery<br>8. Negligence<br>9. Violation of the Bane Act<br>10. Negligence – Bystander<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiffs M.M.G., a minor, by and through her guardian *ad litem* James K. Sadigh; and MARK GOULD, individually, for their Complaint against CITY OF LOS ANGELES; and DOES 1-10, inclusive, and hereby allege as follows:

**INTRODUCTION**

1.     This civil rights action arises out of the use of excessive and unreasonable force against peaceful protestors, including PLAINTIFF M.M.G., who gathered across the nation following the murder of George Floyd by Minneapolis Police Department officers.  Millions of people protested the killing of black and brown men and women by law enforcement officers, which were thereafter ratified by municipalities.  Over several days of peaceful protest, the Los Angeles Police Department ("LAPD") prevented, by use of excessive and unreasonable force, thousands of people from exercising their Constitutional right to peacefully protest against police violence.

2.     LAPD officers, including the DEFENDANT officers, prevented PLAINTIFFS' freedom of assembly, freedom of speech and petition through the use of indiscriminately using batons to hit and beat those in attendance. PLAINTIFF GOULD was struck multiple times by said batons, even after falling injured to the ground.  PLAINTIFF M.M.G. witnessed the excessive use of force against her father, PLAINTIFF GOULD.  The force used and the damage caused is strong evidence that the LAPD training in the use of "less-lethal" weapons which are capable of causing serious bodily injury and even death is wholly inadequate and demonstrates the Defendant CITY'S deliberate indifference to the rights of the citizens of Los Angeles, including PLAINTIFF GOULD.

3.      Over the course of the last several decades, the Defendant CITY has been repeatedly sued for many of the same tactics challenged herein, including the excessive use of "less-lethal" weapons such as tasers, batons, and rubber bullets.  A jury has previously found that the training policies of the Defendant CITY regarding the use of less lethal weapons, there the taser, were not adequate and that the Defendant CITY was deliberately indifferent to the known and obvious consequences of its failure to train its officers adequately.  *See Mears v. City of Los Angeles*, CV-15-08441-JAK (AJWx).

4.      On May 30, 2020, peaceful protests began in the area of Third and Fairfax Streets in Los Angeles, California.  During this peaceful protest, LAPD officers used excessive and unreasonable force against PLAINTIFF GOULD causing him injury.  This civil rights action seeks compensatory and punitive damages from DEFENDANTS for violating various rights under the United States Constitution in connection with the use of excessive and unreasonable force.

5.      DEFENDANT DOE OFFICERS caused PLAINTIFF GOULD'S injuries by repeatedly striking PLAINTIFF GOULD with a police baton, while PLAINTIFF was merely arriving at the peaceful protest to pick up his minor daughter, M.M.G., who was sixteen years old at the time and was a witness to the excessive use of force against her father, PLAINTIFF GOULD.

6.      DOES 1-8, inclusive, ("DOE OFFICERS") caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident.

7.      Defendants CITY OF LOS ANGELES and DOES 9-10, inclusive, also caused various injuries and are liable under federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

3

COMPLAINT FOR DAMAGES

8.     This action is in the public interest as PLAINTIFFS seek by means of this civil rights action to hold accountable those responsible for the use of excessive force and the bodily injury inflicted by DEFENDANT DOE OFFICERS, including the CITY OF LOS ANGELES' ratification, failure to train, and policy of inaction in the face of serious constitutional violations, as well as the unlawful custom and practice with respect to the use of force against peaceful protestors.

## THE PARTIES

9.     At all relevant times, Plaintiff Mark Gould ("GOULD") was an individual residing in Los Angeles County, California.

10.     Plaintiff M.M.G., a minor, is an individual residing in Los Angeles, California and is the natural daughter of PLAINTIFF GOULD. M.M.G. sues in her individual capacity, by and through her Guardian *ad litem* James K. Sadigh, and seeks damages under federal and state law.

11.     DEFENDANT CITY OF LOS ANGELES ("CITY") is a political subdivision of the State of California that is within this judicial district.  CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the CITY OF LOS ANGELES POLICE DEPARTMENT ("LAPD") and its agents and employees. At all relevant times, DEFENDANT CITY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the CITY, LAPD, and its employees and agents complied with the laws of the United States and the State of California.   At all relevant times, CITY was the employer of DEFENDANT DOES 1-10.

12.     DEFENDANTS DOES 1-8 ("DOE OFFICERS"), inclusive, are officers for the LAPD.  At all relevant times, these DEFENDANTS were

acting under color of law within the course and scope of their duties as CITY LAPD officers. At all relevant times, DEFENDANT DOES 1-8, were acting with the complete authority and ratification of their principal, DEFENDANT CITY.

13.    Defendants DOES 9-10 ("DOE SUPERVISORS"), are managerial, supervisorial, or policymaking employees of the CITY who were acting under color of law within the course and scope of their duties as supervisorial officers for the LAPD.  DOES 9-10, were acting with the complete authority of their principal, DEFENDANT CITY.

14.    PLAINTIFFS are ignorant of the true names and capacities of DEFENDANTS DOES 1-10, and therefore sues these defendants by such fictitious names.  PLAINTIFFS will amend the complaint to allege the true names and capacities of those defendants when the same has been ascertained. PLAINTIFFS are informed and believe, and on that basis allege, that DOES 1-10, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused PLAINTIFFS' damages.

15.    On information and belief, DOES 1-10, were at all relevant times residents of the County of Los Angeles.

16.    PLAINTIFFS are informed and believe, and on that basis allege, that DEFENDANTS acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

17.    PLAINTIFFS are informed and believe, and on that basis allege, that at all times mentioned herein all DEFENDANTS acted under color of law, statute, ordinance, regulations, customs and usages of the State of California and the CITY.

18.     All DEFENDANTS who are natural persons, including DOES 1-10, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the CITY and the LAPD.

19.     PLAINTIFF GOULD suffered serious bodily injury as a direct and proximate result of the actions of DEFENDANT DOES 1-10.  PLAINTIFF M.M.G. was present and aware as DOES 1-8 inflicted said injury upon her father, PLAINTIFF GOULD and suffered mental and emotional harm as a direct and proximate result of DEFENDANT DOES 1-10'S actions. DEFENDANT DOES 1-10 are directly liable for PLAINTIFFS' injuries under federal law pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

20.     The Court has jurisdiction over PLAINTIFFS' claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because PLAINTIFFS assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.

21.     This Court has supplemental jurisdiction over PLAINTIFFS' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

22.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

/ / /

/ / /

COMPLAINT FOR DAMAGES

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23.     PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 22, inclusive, as if fully set forth herein.

24.     PLAINTIFF GOULD sustained injuries, including but not limited to pain and suffering when DEFENDANT DOES 1-8 struck PLAINTIFF GOULD multiple times with a hard rubber baton, striking him on the legs numerous times, even after he fell to the ground as a result of the blows.

25.     On May 30, 2020, PLAINTIFF M.M.G., along with many other citizens of the City of Los Angeles, were peacefully protesting the use of excessive and unreasonable force by law enforcement officers against citizens of the City of Los Angeles as well as citizens of the United States of America, especially when the citizens are minorities.  PLAINTIFF M.M.G. lawfully gathered with like-minded individuals to peacefully protest during daylight hours, and on information and belief the facts giving rise to PLAINTIFFS' claims took place prior to any curfew issued by the CITY.

26.     At all relevant times, neither PLAINTIFFS were resisting officers or threatening any person or officer.  PLAINTIFF M.M.G. was merely a participant in the peaceful protests that followed the death of George Floyd. George Floyd was a black man who was handcuffed and died after he was pinned to the ground under the knee of a white Minneapolis police officer, which was captured on camera.  Hundreds of thousands of individuals took to the streets across the country in a display of unity against the unlawful and unconscionable acts of police brutality and excessive force, which disproportionately affect minority groups.

27.     At or around the cross streets of Fairfax and Third, in Los Angeles, California, PLAINTIFF GOULD arrived to pick up his daughter, M.M.G. from the peaceful protest.  LAPD officers had already arrived and gathered around

1  the peaceful protestors, including where PLAINTIFFS M.M.G. and GOULD
2  were standing.

3      28.    At all relevant times, LAPD never advised PLAINTIFFS or the
4  peaceful gathering that such a gathering was unlawful.

5      29.    At the time of their arrival at or near the intersection of Fairfax
6  and Third Streets in downtown Los Angeles, the LAPD officers, including
7  DEFENDANT DOES 1-8 began instructing the peaceful protesters to back up,
8  but immediately as they were instructing them to back up, DEFENDANT
9  DOES 1-8 began quickly advancing, batons raised, and striking PLAINTIFF
10 GOULD.  PLAINTIFFS and other peaceful protestors were in the process of
11 complying with DEFENDANT DOES 1-8's requests, and PLAINTIFF
12 GOULD was taking steps backwards, with his hands raised.

13     30.    As DEFENDANT DOES 1-8 continued to press their assault line
14 forward, at least two male LAPD officers advanced more quickly and began
15 using their batons against PLAINTIFF GOULD, without justification and
16 striking him numerous times, causing injuries to his legs.  PLAINTIFF
17 GOULD fell to the ground in severe pain, but DEFENDANT DOES 1-8
18 continued to strike him.

19     31.    PLAINTIFF M.M.G. was present at the scene and witnessed the
20 excessive and negligent use of force by DEFENDANT DOES 1-8 against her
21 father, PLAINTIFF GOULD and had a contemporaneous awareness that her
22 father was being injured.  As a result, PLAINTIFF M.M.G. suffered severe
23 emotional distress.

24     32.    On information and belief, no warnings were issued prior to the
25 use of the batons upon the peaceful protesters, including upon PLAINTIFF
26 GOULD.

27

28

COMPLAINT FOR DAMAGES

33.   PLAINTIFF GOULD was subjected to an unreasonable seizure of his person, unreasonable and excessive force, including deadly force, inflicted through the unreasonable and excessive deployment of the hard rubber batons, which caused PLAINTIFF GOULD to experience severe and debilitating injuries.

34.   From the first moment PLAINTIFF GOULD heard officers' commands for the protesters to back up, he complied and never made any movement or indication of any kind that he intended not to comply.  Neither PLAINTIFF M.M.G. nor PLAINTIFF GOULD were combative or assaultive towards officers in any way.

35.   As a result of the repeated impact, PLAINTIFF GOULD experienced serious bodily injury, including severe injuries to his legs, including bruising and swelling, which resulted in severe pain and required PLAINTIFF GOULD to seek medical attention.

36.   The use of force was excessive and objectively unreasonable under the circumstances, especially because PLAINTIFFS did not pose an immediate threat of death or serious bodily injury to anyone at the time of the excessive use of force against PLAINTIFF GOULD.  Moreover, PLAINTIFF GOULD had his hands raised above his head in an effort to comply and/or show his willingness to comply.

37.   On October 12, 2020, PLAINTIFFS filed a comprehensive and timely claim for damages with the City of Los Angeles pursuant to applicable sections of the California Government Code.

38.   On November 9, 2020, the CITY rejected PLAINTIFF M.M.G.'S claims.

39.   On February 3, 2021, the CITY rejected PLAINTIFF GOULD'S claims.

40.     PLAINTIFF GOULD seeks damages for past and future pain and suffering including: impairment, emotional distress, mental anguish, embarrassment; past and future medical expenses, lost profits, past and future lost wages.    PLAINTIFF M.M.G. PLAINTIFFS also seeks reasonable attorneys' fees and costs.

## FIRST CLAIM FOR RELIEF

**First Amendment – Freedom of Speech, Freedom of Assembly, Retaliation (42 U.S.C. § 1983)**

(By PLAINTIFFS against DOES 1-8, inclusive)

41.     PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 40, inclusive, as if fully set forth herein.

42.     The First Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to have freedom of speech, assembly, and the right to petition the Government, and protects against retaliation when a person is engaged in these constitutionally protected activities.

43.     DEFENDANT DOES 1-8 were acting under color of state law and within the course and scope of their employment as law enforcement officers for the CITY.

44.     Under the First Amendment of the United States Constitution, PLAINTIFFS had the right to peaceably assemble, speak, and petition the Government regarding the CITY'S use of excessive and unreasonable force.

45.     Given the historical importance of public protests, the First Amendment singles out this particular form of expressive conduct for explicit constitutional protection, especially for nonviolent assemblies.    The DEFENDANTS violated PLAINTIFFS' rights by preventing their exercise of

their First Amendment rights through the use of excessive and unreasonable force, and without appropriate accommodation, during a peaceful protest.

46.    At the time of the incident, PLAINTIFFS were engaged in the exercise of their constitutional rights to assemble, petition, and speak on matters such as police brutality and the use of excessive force by law enforcement, especially as applied to minorities.

47.    DEFENDANT DOES 1-8 deprived PLAINTIFFS of exercising their constitutional rights to peaceably assemble, speak, and petition under the First Amendment to the Constitution when PLAINTIFFS were met during a peaceful protest by an assault line of police officers that advanced and used less than lethal force against them - even though they were not resisting and were not a threat of harm to any person or officer.  PLAINTIFF GOULD suffered injuries to his legs from repeated blows from police batons, and PLAINTIFF M.M.G. was present at the scene and witnessed the excessive and negligent use of force by DEFENDANT DOES 1-8 against her father, PLAINTIFF GOULD and had a contemporaneous awareness that her father was being injured.

48.    The actions of DEFENDANT DOES 1-8 against PLAINTIFFS would have a chilling effect on a person of ordinary sensibilities from continuing to engage in the protected activities of peacefully assembling, petitioning, and speaking because of the threat of serious bodily injury, pain, and impairment if a person were to exercise their rights.

49.    DEFENDANT DOES 1-8 caused various injuries as mentioned herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. DEFENDANTS' acts and omissions deprived PLAINTIFFS of their rights to peacefully assemble, speak, and petition as guaranteed to PLAINTIFFS under

the First Amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment.

50.    As a direct result of the aforesaid acts and omissions of DOES 1-8, PLAINTIFFS suffered great physical and mental injury, as well as fear and emotional distress related to her physical injuries from the incident.

51.    The conduct of DEFENDANTS DOES 1-8 alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFFS and warrants the imposition of exemplary and punitive damages in an amount according to proof.

52.    PLAINTIFFS seek damages for past and future pain and suffering including: impairment, emotional distress, mental anguish, embarrassment, loss of quality of life, past and future medical expenses, lost profits, past and future lost wages, and loss of earning capacity under this claim.  PLAINTIFFS also seek reasonable attorneys' fees and costs under this claim.

## SECOND CLAIM FOR RELIEF
**Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)**
(By PLAINTIFFS against DOES 1-8, inclusive)

53.    PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 52 of their Complaint with the same force and effect as if fully set forth herein.

54.    DEFENDANTS DOES 1-8 detained PLAINTIFFS without reasonable suspicion and arrested them without probable cause.

55.    When DEFENDANTS DOES 1-8 used their police batons repeatedly against PLAINTIFF GOULD, while PLAINTIFF M.M.G. was on scene, watcing, and contemporaneously aware of the use of force against her father, PLAINTIFF GOULD, they violated PLAINTIFFS' rights to be secure in their persons against

unreasonable searches and seizures as guaranteed to PLAINTIFFS under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

56.     The conduct of DEFENDANTS DOES 1-8 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS DOES 1-8.

57.     As a result of their misconduct, DEFENDANTS DOES 1-8 are liable for PLAINTIFFS' injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

58.     PLAINTIFFS bring this claim and seek damages for the violation of their rights.  PLAINTIFFS further seek attorney's fees and costs under this claim.

### THIRD CLAIM FOR RELIEF

**Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

(By PLAINTIFF GOULD against DOES 1-8, inclusive)

59.     PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 58, inclusive, as if fully set forth herein.

60.     The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

61.     When DEFENDANTS DOES 1-8, arrived at or about the intersection of Fairfax and Third Streets in downtown Los Angeles, PLAINTIFFS were not threatening any person at the time, and PLAINTIFFS, including PLAINTIFF GOULD never verbally threated any person, including DEFENDANTS.

PLAINTIFFS were participating in a peaceful protest in the wake of the death of George Floyd.

62.     PLAINTIFF GOULD never threatened anyone, made no aggressive movements toward anyone, made no furtive gestures, and no physical movements that would reasonably suggest to the DEFENDANT DOES 1-8 that PLAINTIFF GOULD was attempting, willing, or intending to inflict harm to anyone. PLAINTIFF GOULD followed commands by DEFENDANT DOES 1-8 for the protesters to back up, and raised his hands.  DEFENDANT DOES 1-8 began using their batons and firing hard rubber baton projectiles, without justification, on the peaceful protestors.  DEFENDANT DOES 1-8 aimed and swung their batons at PLAINTIFF GOULD, striking him repeatedly with the batons, even after PLAINTIFF GOULD fell to the ground in pain, which was a show of force sufficient to effectuate a seizure of PLAINTIFF GOULD.

63.     Throughout the incident, PLAINTIFFS, including PLAINTIFF GOULD presented no immediate threat to the safety of the officers or others, and was not an immediate threat of death or serious bodily injury to any officer or other person.

64.     DEFENDANT DOES 1-8 caused various injuries as mentioned herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. DEFENDANTS' acts and omissions deprived PLAINTIFF GOULD of his right to be secure in his person against unreasonable searches and seizures as guaranteed to PLAINTIFF GOULD under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

65.     As a direct result of the aforesaid acts and omissions of DOES 1-8, PLAINTIFF GOULD suffered great physical and mental injury, as well as fear and emotional distress related to his physical injuries.

COMPLAINT FOR DAMAGES

66.     The conduct of DEFENDANT DOES 1-8 alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF GOULD and warrants the imposition of exemplary and punitive damages in an amount according to proof.

67.     DEFENDANT DOES 1-8 were acting under color of state law and within the course and scope of their employment as law enforcement officers for the CITY.

68.     PLAINTIFF GOULD seeks damages for his past and future pain and suffering including: impairment, emotional distress, mental anguish, embarrassment, past and future medical expenses under this claim.  PLAINTIFF GOULD also seeks reasonable attorneys' fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)

(By PLAINTIFFS against CITY; and DOES 9-10, inclusive)

69.     PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 68, inclusive, as if fully set forth herein.

70.     DEFENDANTS DOES 1-8, inclusive, acted under color of state law.

71.     DEFENDANTS DOES 1-8, inclusive, acted pursuant to an expressly adopted or fiscal policy or longstanding practice or custom of the DEFENDANT CITY, and DOES 9-10.

72.     On information and belief, DEFENDANTS DOES 1-8, were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with deprivation of PLAINTIFFS' rights.

/ / /

73.     DEFENDANTS CITY, and DOES 9-10, together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     The CITY routinely fails to train its officers in the constitutional responses to peaceful demonstrations.

(b)     Using excessive and unreasonable force, including deadly force on unarmed persons who do not pose a risk of imminent death or serious bodily injury to others.

(c)     Providing inadequate training regarding the use of force, including the use of less lethal force, including batons, baton projectiles, and deadly force.

(d)     Employing and retaining as police officers, individuals such as DEFENDANTS DOES 1-8, who DEFENDANT CITY, and DOES 9-10, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

(e)     Inadequately supervising, training, controlling, assigning, and disciplining CITY law enforcement officers, and other personnel, including DEFENDANTS DOES 1-8, who CITY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

(f)     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by law enforcement officers of the CITY.

(g)     Failing to adequately discipline CITY law enforcement officers for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist,"

1   discipline that is so slight as to be out of proportion with the

2   magnitude of the misconduct, and other inadequate discipline that

3   is tantamount to encouraging misconduct.

4   (h)   Encouraging, accommodating, or facilitating a "blue code

5   of silence," "blue shield," "blue wall," "blue curtain," "blue veil,"

6   or simply "code of silence," pursuant to which officers do not

7   report other officers' errors, misconduct, or crimes.  Pursuant to

8   this code of silence, if questioned about an incident of misconduct

9   involving another officer, while following the code, the officer

10  being questioned will claim ignorance of the other officer's

11  wrongdoing.

12  74.   Additional and supporting evidence of the maintenance of

13  unconstitutional customs, practices, or policies of DEFENDANT CITY can be

14  found in a report commissioned by the City of Los Angeles and conducted by an

15  Independent Counsel, released on or about March 11, 2021 (hereinafter,

16  "Report").[1]  The March 11, 2021 Report evaluates the late May 2020 and early

17  June 2020 protests in Downtown Los Angeles and the LAPD'S handling of said

18  protests.  The Report indicates hundreds of injuries and alleged violations of rights

19  by the LAPD officers occurred during protests such as the one participated in by

20  PLAINTIFFS on May 30, 2020.  The Report indicated among other things, a lack

21  of training to properly prepare officers for managing large crowds.  Further, the

22  Report noted a lack of training on less than lethal force, and when it can and

23  should be used in large crowds or gatherings.  It noted many of the reported

24  injuries were from less than lethal uses of force and indicated the appropriateness

25  of use of police batons was unable to be determined.  At the time of injury these

26

27

28

---

[1] *See* Gerald Chaleff, AN INDEPENDENT EXAMINATION OF THE LOS ANGELES POLICE DEPARTMENT 2020 PROTEST RESPONSE (March 11, 2021), https://int.nyt.com/data/documenttools/lapd-george-floyd-protests-report/ec6b2bf2056f6727/full.pdf (last visited March 30, 2021).

individuals had been involved in peaceful protests, were unthreatening, and many had their hands raised, and thereby not involved in any violent or hostile acts. Moreover, the Report indicated that there have been similar studies, findings, and legal actions in similar prior incidents with the LAPD over the years in regards to peaceful protests and the excessive and unreasonable use of force, including less lethal force, such as in 2000, 2007, 2011, and 2014.

75.     DEFENDANT CITY has been made aware of its duties under the Constitution under several prior settlement agreements and consent judgements which identified unlawful customs, practices, and policies relating to the unlawful uses of force against those who are lawfully assembled, as well as clearly established deficiencies in DEFENDANT CITY'S training of its LAPD officers in regards to the use of force in relation to protests.  *See National Lawyers Guild v. City of Los Angeles,* CV 01-6877 FMC (CWx); *see also Multi-Ethnic Immigrant Workers Organizing Network, et al. v. City of Los Angeles, et al.,* 2009 WL 1043788 (C.D.Cal.); Case No.: CV 07-3072 AHM (FMMx).

76.     By reason of the aforementioned acts and omissions, PLAINTIFFS have endured substantial pain and suffering.

77.     DEFENDANTS CITY and DOES 9-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein.  Despite having knowledge as stated above, these DEFENDANTS condoned, tolerated and through actions and inactions thereby ratified such policies.  Said DEFENDANTS also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of PLAINTIFFS and other individuals similarly situated.

78.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DEFENDANTS CITY and DOES 9-10, acted

with intentional, reckless, and callous disregard for the PLAINTIFFS' constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by DEFENDANTS CITY and DOES 9-10, were affirmatively linked to and were a significantly influential force behind PLAINTIFFS' injuries.

79.     The acts of each of DEFENDANTS DOES 9-10, were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants imposition of exemplary and punitive damages as to DOES 9-10.

80.     Based on information and belief, the following are examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the excessive use of force and underlying acts giving rise to the below lawsuits, which indicates that the CITY routinely ratifies such behavior, fails to train its officers, and maintains a practice of allowing such behavior:

(a)     In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), a unanimous jury award for Mr. Contreras after finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

(b)     In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, a unanimous jury award for plaintiffs after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

(c)     In *Herrera, et al. v. City of Los Angeles, et al*., case number 16-cv-02719-DSF (SHx), a unanimous jury award for plaintiffs where a LAPD officer used excessive force.

(d)     In *Mears, et al. v. City of Los Angeles*, et al., case number 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers, and found that the involved officers' use of deadly force was excessive and unreasonable.

(e)     In *Hernandez, et al. v. City of Los Angeles*, et al., case number 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive unreasonable force and restraint against Alex Jimenez, who was unarmed.

(f)     In *L.D., et al. v. City of Los Angeles*, case number 2:16-cv-04626-PSG, a unanimous jury found that officers used excessive and unreasonable force against Cesar Frias, including the use of tasers and bean bag shotguns.

(g)     In *Navas, et al. v. City of Los Angeles, et al.*, case number CV15-09515 SVW(JCx), the City determined that the LAPD officer's use of deadly force against Sergio Navas was excessive and unreasonable and outside City policy.

(h)     In *Medina v. City of Los Angeles*, case number CV 06-4926-CBM (Ex), plaintiff alleged that the involved LAPD officers used excessive and unreasonable force when they kept Mr. Medina (the decedent) down in a prone position while he was handcuffed and hobbled and placed weight on his back and pressure on his neck for an extended period of time.  The medical examiner in that case confirmed that Mr. Medina died as a result of restraint asphyxia.  A unanimous jury returned a verdict in plaintiff's favor, finding that the use of force was excessive and unreasonable.  In that case, the involved officers were not disciplined or retrained for their use of

force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

(i)   In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, currently pending in the United States District Court for the Central District of California, the family of an unarmed man (David Martinez) who was shot and killed by LAPD Rampart officers alleges that the force used by the officers was excessive and unreasonable.  Police reports confirm that Mr. Martinez was unarmed at the time of the shooting.  In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

81.  Accordingly, DEFENDANTS CITY and DOES 9-10, each are liable for compensatory damages under 42 U.S.C. § 1983.

82.   PLAINTIFFS seek damages for past and future pain and suffering including: impairment, emotional distress, mental anguish, embarrassment, past and future medical expenses under this claim.  PLAINTIFFS also seek reasonable attorneys' fees and costs under this claim.

## **FIFTH CLAIM FOR RELIEF**

### **Municipal Liability for Failure to Train (42 U.S.C. §1983)**

(By PLAINTIFFS against CITY and DOES 9-10, inclusive)

83.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 82 of this Complaint with the same force and effect as if fully set forth herein.

84.   DEFENDANTS DOES 1-8, inclusive, acted under color of law.

COMPLAINT FOR DAMAGES

85.     The acts of DEFENDANTS DOES 1-8, deprived PLAINTIFFS of their particular rights under the United States Constitution.

86.     On information and belief, DEFENDANT CITY failed to properly and adequately train DEFENDANTS DOES 1-8, including but not limited to, with regard to the constitutional response to peaceful demonstrations and the use of physical force, less than lethal force, and lethal force.

87.     The training policies of DEFENDANT CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including de-escalation techniques, and both the use of less than lethal and lethal force.

88.     The training that the CITY'S law enforcement officers, including DEFENDANT DOES 1-8, should have received with regards to the constitutional responses to peaceful demonstrations, the use of hard rubber baton projectiles and police batons, especially against an unarmed man, and causing serious injuries, includes training that officers should not less than lethal force such as their batons against an unarmed subject who posed no threat of harm to officers or anyone else.

89.     DEFENDANT CITY and DOES 9-10, were deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

90.     The failure of DEFENDANT CITY and DOES 9-10, to provide adequate training caused the deprivation of PLAINTIFFS' rights by DEFENDANTS DOES 1-8; that is, DEFENDANTS' failure to train is so closely related to the deprivation of PLAINTIFFS' rights as to be the moving force that caused the ultimate injury.

91.     The following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the excessive use of force and underlying acts giving

rise to the below lawsuits, which indicates that DEFENDANT CITY failed to adequately train its officers, more specifically the failure to train with regard to the use of force:

      (a)    In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), a unanimous jury award for Mr. Contreras after finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

      (b)    In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, a unanimous jury award for plaintiffs after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

      (c)    In *Herrera, et al. v. City of Los Angeles, et al*., case number 16-cv-02719-DSF (SHx), a unanimous jury award for plaintiffs after finding that the involved LAPD officer used excessive force against Ruben Herrera when he shot him.

      (d)    In *Mears, et al. v. City of Los Angeles*, et al., case number 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers, and found that the involved officers' use of deadly force was excessive and unreasonable.

      (e)    In *Hernandez, et al. v. City of Los Angeles*, et al., case number 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive unreasonable force and restraint against Alex Jimenez, who was unarmed.

      (f)    In *L.D., et al. v. City of Los Angeles*, case number 2:16-cv-04626-PSG, a unanimous jury found that certain officers used

COMPLAINT FOR DAMAGES

excessive and unreasonable force against Cesar Frias, including for the use of "less-lethal" weapons.

(g)     In *Navas, et al. v. City of Los Angeles, et al.*, case number CV15-09515 SVW(JCx), the City determined that the LAPD officer's use of deadly force against Sergio Navas was excessive and unreasonable and outside City policy.

(h)     In *Medina v. City of Los Angeles*, case number CV 06-4926-CBM (Ex), Plaintiff alleged that the involved LAPD officers used excessive and unreasonable force when they kept Mr. Medina (the decedent) down in a prone position while he was handcuffed and hobbled and placed weight on his back and pressure on his neck for an extended period of time.  The medical examiner in that case confirmed that Mr. Medina died as a result of restraint asphyxia.  A unanimous jury returned a verdict in Plaintiff's favor, finding that the use of force was excessive and unreasonable.  In that case, the involved officers were not disciplined or retrained for their use of force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

(i)     In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, currently pending in the United States District Court for the Central District of California, the family of an unarmed man (David Martinez) who was shot and killed by LAPD Rampart officers alleges that the force used by the officers was excessive and unreasonable.  Police reports confirm that Mr. Martinez was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the

COMPLAINT FOR DAMAGES

1    CITY found that the shooting was justified and did not violate any

2    CITY policy.

3         92.     Additional and supporting evidence of the maintenance of

4    unconstitutional customs, practices, or policies of DEFENDANT CITY can be

5    found in a report commissioned by the City of Los Angeles and conducted by an

6    Independent Counsel, released on or about March 11, 2021 (hereinafter,

7    "Report").[2]  The March 11, 2021 Report evaluates the late May 2020 and early

8    June 2020 protests in Downtown Los Angeles and the LAPD'S handling of said

9    protests.  The Report indicates hundreds of injuries and alleged violations of rights

10   by the LAPD officers occurred during protests such as the one participated in by

11   PLAINTIFFS on May 30, 2020.  The Report indicated among other things, a lack

12   of training to properly prepare officers for managing large crowds.  Further, the

13   Report noted a lack of training on less than lethal force, and when it can and

14   should be used in large crowds or gatherings.  It noted many of the reported

15   injuries were from less than lethal uses of force, and indicated the appropriateness

16   of use of police batons was unable to be determined.  At the time of injury these

17   individuals had been involved in peaceful protests, were unthreatening, and many

18   had their hands raised, and thereby not involved in any violent or hostile acts.

19   Moreover, the Report indicated that there have been similar studies, findings, and

20   legal actions in similar prior incidents with the LAPD over the years in regards to

21   peaceful protests and the excessive and unreasonable use of force, including less

22   lethal force, such as in 2000, 2007, 2011, and 2014.

23        93.     DEFENDANT CITY has been made aware of its duties under the

24   Constitution under several prior settlement agreements and consent judgements

25   which identified unlawful customs, practices, and policies relating to the unlawful

26

---

27   [2] *See* Gerald Chaleff, AN INDEPENDENT EXAMINATION OF THE LOS ANGELES POLICE DEPARTMENT 2020 PROTEST RESPONSE (March 11, 2021), https://int.nyt.com/data/documenttools/lapd-george-floyd-protests-report/ec6b2bf2056f6727/full.pdf (last visited March 30, 2021).

28

uses of force against those who are lawfully assembled, as well as clearly established deficiencies in DEFENDANT CITY'S training of its LAPD officers in regards to the use of force in relation to protests.  *See National Lawyers Guild v. City of Los Angeles,* CV 01-6877 FMC (CWx); *see also Multi-Ethnic Immigrant Workers Organizing Network, et al. v. City of Los Angeles, et al.,* 2009 WL 1043788 (C.D.Cal.); Case No.: CV 07-3072 AHM (FMMx).

94.    Accordingly, DEFENDANT CITY and DOES 9-10, are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

95.    PLAINTIFFS seek damages for past and future pain and suffering including: impairment, emotional distress, mental anguish, embarrassment, past and future medical expenses under this claim.  PLAINTIFFS also seek reasonable attorneys' fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By PLAINTIFFS against CITY and DOES 9-10, inclusive)

96.    PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 95 of this Complaint with the same force and effect as if fully set forth herein.

97.    DEFENDANTS DOES 1-8, inclusive, acted under color of law.

98.    The acts of DEFENDANTS DOES 1-8, deprived PLAINTIFFS of their particular rights under the United States Constitution.

99.    Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying the unconstitutional response to peaceful protest and unreasonable uses of force, including deadly force.

100.    Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of

DEFENDANTS DOES 1-8'S, acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of DEFENDANTS DOES 1-8'S, acts.

101.   On information and belief, CITY final policymakers, including DOES 9-10, knew that PLAINTIFFS never presented a risk of harm to an officer or anyone else, including PLAINTIFF GOULD, and that PLAINTIFF GOULD complied with officers' commands at the first moment he heard them.

102.   On information and belief, the official policies with respect to the incident are that officers are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the officers or others, or if the individual has inflicted death or serious bodily injury against someone or threatened to do so, the officers may use deadly force to prevent the individual's escape.  The officers' actions deviated from these official policies because PLAINTIFF GOULD did not pose an immediate threat of death or serious bodily injury to the involved officers or anyone else.

103.   Upon information and belief, a final policymaker has determined that the acts of DOES 1-8 were "within policy."

104.   The following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the excessive use of force and underlying acts giving rise to the below lawsuits, which indicates that DEFENDANT CITY routinely ratifies such behavior:

> (a)   In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), a unanimous jury award for Mr. Contreras after finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

(b)     In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413
PLA, a unanimous jury award for plaintiffs after finding that the
involved LAPD officers' use of deadly force was excessive and
unreasonable.

(c)     In *Herrera, et al. v. City of Los Angeles, et al*., case number
16-cv-02719-DSF (SHx), a unanimous jury award for plaintiffs after
finding that the involved LAPD officer used excessive force against
Ruben Herrera when he shot him.

(d)     In *Mears, et al. v. City of Los Angeles*, et al., case number
2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability
on the part of the City for failure to properly train its LAPD officers,
and found that the involved officers' use of deadly force was
excessive and unreasonable.

(e)     In *Hernandez, et al. v. City of Los Angeles*, et al., case number
2:16-cv-02689, a unanimous jury found that two LAPD officers used
excessive unreasonable force and restraint against Alex Jimenez, who
was unarmed.

(f)     In *L.D., et al. v. City of Los Angeles*, case number 2:16-cv-
04626-PSG, a unanimous jury found that certain officers used
excessive and unreasonable force against Cesar Frias, including for
the use of "less-lethal" weapons.

(g)     In *Navas, et al. v. City of Los Angeles, et al.*, case number
CV15-09515 SVW(JCx), the City determined that the LAPD
officer's use of deadly force against Sergio Navas was excessive and
unreasonable and outside City policy.

(h)     In *Medina v. City of Los Angeles*, case number CV 06-4926-
CBM (Ex), Plaintiff alleged that the involved LAPD officers used

excessive and unreasonable force when they kept Mr. Medina (the decedent) down in a prone position while he was handcuffed and hobbled and placed weight on his back and pressure on his neck for an extended period of time. The medical examiner in that case confirmed that Mr. Medina died as a result of restraint asphyxia. A unanimous jury returned a verdict in Plaintiff's favor, finding that the use of force was excessive and unreasonable. In that case, the involved officers were not disciplined or retrained for their use of force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

(i)    In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, currently pending in the United States District Court for the Central District of California, the family of an unarmed man (David Martinez) who was shot and killed by LAPD Rampart officers alleges that the force used by the officers was excessive and unreasonable. Police reports confirm that Mr. Martinez was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

105.    Additional and supporting evidence of the maintenance of unconstitutional customs, practices, or policies of DEFENDANT CITY can be found in a report commissioned by the City of Los Angeles and conducted by an Independent Counsel, released on or about March 11, 2021 (hereinafter, "Report").[3] The March 11, 2021 Report evaluates the late May 2020 and early

---

[3] *See* Gerald Chaleff, AN INDEPENDENT EXAMINATION OF THE LOS ANGELES POLICE DEPARTMENT 2020 PROTEST RESPONSE (March 11, 2021), https://int.nyt.com/data/documenttools/lapd-george-floyd-protests-report/ec6b2bf2056f6727/full.pdf (last visited March 30, 2021).

June 2020 protests in Downtown Los Angeles and the LAPD'S handling of said protests.  The Report indicates hundreds of injuries and alleged violations of rights by the LAPD officers occurred during protests such as the one participated in by PLAINTIFFS on May 30, 2020.  The Report indicated among other things, a lack of training to properly prepare officers for managing large crowds.  Further, the Report noted a lack of training on less than lethal force, and when it can and should be used in large crowds or gatherings.  It noted many of the reported injuries were from less than lethal uses of force, and indicated the appropriateness of use of police batons was unable to be determined.  At the time of injury these individuals had been involved in peaceful protests, were unthreatening, and many had their hands raised, and thereby not involved in any violent or hostile acts.  Moreover, the Report indicated that there have been similar studies, findings, and legal actions in similar prior incidents with the LAPD over the years in regards to peaceful protests and the excessive and unreasonable use of force, including less lethal force, such as in 2000, 2007, 2011, and 2014.

106.   DEFENDANT CITY has been made aware of its duties under the Constitution under several prior settlement agreements and consent judgements which identified unlawful customs, practices, and policies relating to the unlawful uses of force against those who are lawfully assembled, as well as clearly established deficiencies in DEFENDANT CITY'S training of its LAPD officers in regards to the use of force in relation to protests.  *See National Lawyers Guild v. City of Los Angeles,* CV 01-6877 FMC (CWx); *see also Multi-Ethnic Immigrant Workers Organizing Network, et al. v. City of Los Angeles, et al.,* 2009 WL 1043788 (C.D.Cal.); Case No.: CV 07-3072 AHM (FMMx).

107.   By reason of the aforementioned acts and omissions, DEFENDANTS CITY and DOES 9-10, are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

108.   PLAINTIFFS seek damages for past and future pain and suffering including: impairment, emotional distress, mental anguish, embarrassment, past and future medical expenses under this claim.  PLAINTIFFS also seek reasonable attorneys' fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code § 820 and California Common Law)

(By PLAINTIFF GOULD Against DEFENDANTS CITY and DOES 1-8)

109.   PLAINTIFFS repeat and reallege each and every allegation in paragraphs 1 through 108 of this Complaint with the same force and effect as if fully set forth herein.

110.   At all relevant times, DEFENDANT DOES 1-8 were working as police officers for the LAPD and were acting within the course and scope of their duties as police officers for the CITY.

111.   At or around the cross streets of Fairfax and Third, in Los Angeles, California, PLAINTIFF GOULD arrived to pick up his daughter, M.M.G. from the peaceful protest.  LAPD officers had already arrived and gathered around the peaceful protestors, including where PLAINTIFFS M.M.G. and GOULD were standing.

112.   At all relevant times, LAPD never advised PLAINTIFFS or the peaceful gathering that such a gathering was unlawful.

113.   At the time of their arrival at or near the intersection of Fairfax and Third Streets in downtown Los Angeles, the LAPD officers, including DEFENDANT DOES 1-8 began instructing the peaceful protesters to back up, but immediately as they were instructing them to back up, DEFENDANT DOES 1-8 began quickly advancing, batons raised, and striking PLAINTIFF GOULD. PLAINTIFFS and other peaceful protestors were in the process of complying with

DEFENDANT DOES 1-8'S requests, and PLAINTIFF GOULD was taking steps backwards, with his hands raised.

114.   As DEFENDANT DOES 1-8 continued to press their assault line forward, at least two male LAPD officers advanced more quickly and began using their batons against PLAINTIFF GOULD, without justification and striking him numerous times, causing injuries to his legs.  PLAINTIFF GOULD fell to the ground in severe pain, but DEFENDANT DOES 1-8 continued to strike him.

115.   As a direct and proximate result of the conduct of DEFENDANT DOES 1-8 as alleged above, PLAINTIFF GOULD suffered serious physical injuries as a result of being hit multiple times with the police baton(s).

116.   DEFENDANT DOES 1-8 had no legal justification for using force against PLAINTIFF GOULD, and said DEFENDANT DOES 1-8'S  use of force while carrying out their duties as police officers was an unreasonable use of force, particularly because PLAINTIFF GOULD did not pose an immediate threat to the life of any individual, including any officer, at the time of the use of excessive force against him, PLAINTIFF GOULD was also not armed at all relevant times, and because PLAINTIFF GOULD was complying with DEFENDANT DOES 1-8'S orders, hands raised in a sign of compliance.

117.   The CITY is vicariously liable for the wrongful acts of DEFENDANT DOES 1-8 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

118.   The conduct of DEFENDANT DOES 1-8 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of PLAINTIFF GOULD, entitling PLAINTIFF GOULD to an award of exemplary and punitive damages, which PLAINTIFF GOULD seeks under this claim.

119.   PLAINTIFF GOULD seeks damages for his past and future pain and suffering including: impairment, emotional distress, mental anguish, embarrassment, past and future medical expenses under this claim.  PLAINTIFF GOULD also seeks reasonable attorneys' fees and costs under this claim.

## EIGHTH CLAIM FOR RELIEF

### Negligence (Cal. Govt. Code § 820 and California Common Law)

(By PLAINTIFF GOULD against all DEFENDANTS)

120.   PLAINTIFFS repeat and reallege each and every allegation in paragraphs 1 through 119 of this Complaint with the same force and effect as if fully set forth herein.

121.   The actions and inactions of Defendants were negligent and reckless, including but not limited to:

        a)   DEFENDANT DOES 1-8'S failure to constitutionally respond to PLAINTIFFS' peaceful protest.

        b)   DEFENDANT DOES 1-8'S failure to properly and adequately assess the need to use force against PLAINTIFF GOULD.

        c)   DEFENDANT DOES 1-8'S negligent tactics and handling of the situation with PLAINTIFF GOULD, including the failure to give PLAINTIFF GOULD a warning prior to force being used.

        d)   DEFENDANT DOES 1-8'S negligent use of force against PLAINTIFF GOULD.

        e)   The failure to properly train and supervise employees, including DEFENDANT DOES 1-8.

        f)   The failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of PLAINTIFFS.

COMPLAINT FOR DAMAGES

122.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, PLAINTIFF GOULD suffered physical injuries, past and future emotional and mental distress, and past and future medical expenses.

123.   The CITY is vicariously liable for the wrongful acts of DEFENDANT DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

124.   PLAINTIFF GOULD seeks damages for his past and future pain and suffering including: impairment, emotional distress, mental anguish, embarrassment, past and future medical expenses under this claim.  PLAINTIFF GOULD also seeks reasonable attorneys' fees and costs under this claim.

## NINTH CLAIM FOR RELIEF

### Violation of the Bane Act (Cal. Civil Code § 52.1)

(By PLAINTIFF GOULD against all DEFENDANTS)

125.   PLAINTIFFS repeat and reallege each and every allegation in paragraphs 1 through 124 of this Complaint with the same force and effect as if fully set forth herein.

126.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.  An intent to violate a person's civil rights can be inferred by a reckless disregard for the person's civil rights.

127.   DEFENDANT DOES 1-8, while working for the CITY and acting within the course and scope of their duties as police officers, intentionally

COMPLAINT FOR DAMAGES

committed, and attempted to commit acts of violence against PLAINTIFF
GOULD, including repeatedly hitting him with their batons without justification
or excuse.

128.   When DEFENDANT DOES 1-8 hit PLAINTIFF GOULD with the
hard rubber batons, even after he fell to the ground injured, they interfered with
PLAINTIFF GOULD'S constitutional rights to be free from unreasonable
searches and seizures, to equal protection of the laws, and to be free from state
actions that shock the conscience, and to life, liberty, and property.

129.   On information and belief, DEFENDANT DOES 1-8 intentionally
and spitefully committed the above acts to discourage PLAINTIFF GOULD from
exercising his civil rights, to retaliate against him for invoking such rights, or to
prevent him from exercising such rights, which he was and is fully entitled to
enjoy.  DEFENDANT DOES 1-8 intentionally interfered with the above
constitutional rights of PLAINTIFF GOULD, and as alleged herein, which can be
demonstrated by DEFENDANT DOES 1-8'S reckless disregard for PLAINTIFF
GOULD'S constitutional rights.

130.   On information and belief, PLAINTIFF GOULD reasonably believed
and understood that the violent acts committed by DEFENDANT DOES 1-8 were
intended to discourage him from exercising the above civil rights, to retaliate
against him for invoking such rights, or to prevent him from exercising such
rights.

131.   The conduct of DEFENDANT DOES 1-8 was a substantial factor in
causing PLAINTIFF GOULD'S harms, losses, injuries, and damages.

132.   The CITY is vicariously liable for the wrongful acts of
DEFENDANT DOES 1-8 pursuant to section 815.2(a) of the California
Government Code, which provides that a public entity is liable for the injuries

1    caused by its employees within the scope of the employment if the employee's act

2    would subject him or her to liability.

3         133.   DEFENDANT DOES 9-10 are vicariously liable under California

4    law and the doctrine of *respondeat superior*.

5         134.   DEFENDANT DOES 1-8'S conduct was malicious, wanton,

6    oppressive, and accomplished with a conscious disregard for PLAINTIFF

7    GOULD'S rights, justifying an award of exemplary and punitive damages as to

8    DEFENDANT DOES 1-8.

9         135.   PLAINTIFF GOULD seeks compensatory damages for the violations

10   of his rights, including for his past and future pain and suffering including:

11   impairment, emotional distress, mental anguish, embarrassment, past and future

12   medical expenses.  PLAINTIFF GOULD also seeks punitive damages, costs, and

13   attorney's fees, including a multiplier, under California Civil Code Section 52 *et*

14   *seq*. as to this claim.

15

16                        **TENTH CLAIM FOR RELIEF**

17                          **Negligence-Bystander**

18           (By Plaintiff M.M.G. against Defendants CITY and DOES 1-8)

19        136.   Plaintiffs repeat and re-allege each and every allegation in paragraphs

20   1 through 135 of this Complaint with the same force and effect as if fully set forth

21   herein.

22        137.   DEFENDANT DOES 1-8, while working as police officers for the

23   City of Los Angeles and while acting within the course and scope of their duties,

24   negligently and carelessly inflicted severe emotional distress on PLAINTIFF

25   M.M.G. when they intentionally and repeatedly hit and beat PLAINTIFF GOULD

26   with their police batons in the presence of PLAINTIFF M.M.G.

27

28

138.   PLAINTIFF M.M.G. was present at or near the scene of the incident when the use of the police batons against her father, PLAINTIFF GOULD occurred.  PLAINTIFF M.M.G. was aware of the fact PLAINTIFF GOULD was being injured at the time of the beating and other uses of force against her father.

139.   As a direct and proximate cause of DEFENDANT DOES 1-8'S conduct, PLAINTIFF M.M.G. was caused to suffer severe emotional distress, including but not limited to anxiety, anguish, humiliation, and other injuries to her nervous system.

140.   PLAINTIFF M.M.G. is the natural daughter of PLAINTIFF GOULD.

141.   PLAINTIFF M.M.G. brings this claim in her individual capacity and seeks compensatory damages for her severe emotional distress as a result of observing the negligent use of force against her father, PLAINTIFF GOULD.

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS M.M.G., by and through her Guardian *ad litem* James K. Sadigh, and MARK GOULD, request entry of judgment in their favor against CITY OF LOS ANGELES and DOES 1-10, inclusive, as follows:

1.  For compensatory damages, according to proof at trial, under federal and State law.

2.  For punitive and exemplary damages against the individual defendants in an amount to be proven at trial.

3.  For statutory damages.

4.  For reasonable attorneys' fees including litigation expenses.

5.  For costs of suit and interest incurred herein.

6.  For such other and further relief as the Court may deem just and proper.


DATED: May 4, 2021                **LAW OFFICES OF DALE K. GALIPO**


By:   */s/     Dale K. Galipo*
      Dale K. Galipo
      *Attorney for Plaintiffs*

COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2        PLAINTIFFS hereby submit this demand that this action be tried in front of

3  a jury.

4

5  DATED: May 4, 2021       **LAW OFFICES OF DALE K. GALIPO**

6

7                By:   */s/     Dale K. Galipo*

8                    Dale K. Galipo
                    *Attorney for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES